Jacob J. Schwartzwald, J.
This is a proceeding to review the determination of respondent denying an application for an increase in the maximum rents.
Petitioners filed an application for an increase in rents under section 33 (subd. 5, par. a) of the State Rent and Eviction Regulations. This section permits such an application where the net rental income from the property yields a net annual return of less than 6% of the valuation of the property. It further provides that such valuation shall be the sales price where there has been a sale subsequent to March 15, 1953, as a result of a transaction at arm’s length, on normal financing terms at a readily ascertainable price and unaffected by special circumstances.
The owners purchased the premises, a six-story elevator apartment house containing 58 rooms in November, 1958. The purchase price was $389,000, of which $37,538 was paid in cash and the balance by taking title subject to three mortgages aggregating $352,462. The cash payment represented 9.6% of the purchase price and the purchase price equaled 7.73 times the annual rent roll of $50,715.24. In December, 1958 the owners filed an application for an increase in rent pursuant to said subdivision 5 of section 33 of the regulations. The Local Rent *788 Administrator denied the application. Respondent rejected the sales price and held that the “ sale was not consummated on normal financing terms solely because the cash payment was less than 15% of the purchase price,” and denied the protest.
Petitioners instituted a proceeding to review respondent’s determination and upon the latter’s request the matter was remitted for further consideration.
A conference was held at which the landlord and the tenants were present or represented by counsel. The notice of hearing for such conference stated: “ The only issue to be explored at this conference is: "What were the factors involved in or affecting the terms of sale to the landlord herein. * * * Neither the testimony nor affidavits of real estate experts concerning their appraisal of the market value of the property will be accepted or considered in this proceeding (see Realty Agency Inc. v. Weaver, N. Y. L. J. July 10,1959).” In accordance with said notice of hearing respondent refused to accept proof of sales of similar buildings in Kings County at a purchase price of seven and one-half to eight times the gross rent roll and that this type of sale with cash of from 8% to 12% was normal in Kings County. Respondent further refused petitioners’ offer of an appraisal of the property and the testimony of the appraiser.
Respondent’s rejection of petitioners’ appraisal and the appraiser’s testimony to substantiate the claim that the price was fair and reasonable and that the financing was normal, was based on the decision, as claimed, in Matter of Realty Agency v. Weaver (7 N Y 2d 249, 255) wherein the court said: “We do not suggest that the subject property need be appraised in the manner followed in condemnation or tax proceedings. We simply state that, in this case, failure of the Administrator to receive and challenge appellant’s proffered evidence and to make appropriate inquiry as to the instant sale at a hearing before him, leaves his findings unsupported by substantial evidence (State Residential Rent Law, § 8, subd. 1; State Rent and Eviction Regulations, § 98, subds. [2], [6]). To hold otherwise, we would be sanctioning an arbitrary restriction on the use of the Legislature’s mandate of sales price (see Matter of Florell Equities v. Weaver, 2 N Y 2d 982; Matter of 340 E. 57th St. Corp. v. Weaver, 2 N Y 2d 799, supra,).” Respondent interprets this language as meaning that it is not required to accept proof of an appraisal or the testimony of an appraiser, whereas the language is decidedly to the contrary. Respondent’s interpretation of the first-quoted sentence is not that he may limit the proof, as that sentence implies, but that he may refuse all *789 proof, which that sentence does not imply. This construction is clearly indicated by the remainder of the paragraph, which is clear and unequivocal and requires the acceptance of evidence and the challenging thereof by the administrator, otherwise his findings are unsupported by substantial evidence.
Prior to the decision in Matter of Realty Agency v. Weaver {supra), our appellate courts had spoken concerning the reception of proof and the adoption of an internal policy of rejecting the purchase price as the appropriate valuation of property where less than 15% is paid in cash in any transaction and had rejected such policy. See Matter of Bajart Management v. Weaver (8 A D 2d 56, 58-59 [1st Dept., May 12,1959]) wherein the court said:
“ It seems that the Commission has adopted an internal policy of rejecting the purchase price as the appropriate valuation of property if less than 15% is paid in cash in any transaction.
“ We cannot approve the processing of an application for rent adjustments, or the granting or denial thereof, upon some internal rule of thumb practice. Such mechanical exercise of administrative judgment and discretion denotes an arbitrary, unreasonable and capricious determination. * * *
‘ ‘ It should be noted that there is no statutory provision specifying the amount or percentage of cash consideration required, as a condition precedent to the allowance of rent increases. Nor is there a regulation containing such a prerequisite. In the absence of statutory direction, the adoption of a percentile line of demarcation may well be the impermissible assumption of power, in excess of that granted by the Legislature.”
See, also, Matter of Crisa v. Weaver (9 A D 2d 917 [2d Dept., Dec. 1959]) wherein the court said: “It was erroneous to refuse to compute the net return on the sales price for the sole reason that the cash payment upon the purchase was only 5.33% of the purchase price. (Matter of Bajart Management v. Weaver, 8 A D 2d 56; Matter of Ackerman v. Weaver, 6 N Y 2d 283.) It would be proper to consider that the property was mortgaged by prior owners merely for the purpose of giving an appearance of enhanced value, but such consideration, to result in decisive materiality, should be based on proof and not merely on an inspection of the official records showing the existence of the mortgages. In testing the bona fides of the sale, respondent might well have considered, as matters of discretion, (1) additional cash payments made by appellant since the purchase, and (2) an impartial appraisal of the market value of the property, as tendered by appellant.”
*790 The testimony shows that one Marvin Greene, a real estate broker, and a relative of petitioners, had inserted an advertisement in the New Yorh Times seeking to purchase a piece of real property. As a result of such advertising Greene received a circular containing particulars of the subject premises. The sales price was indicated at $394,500. Negotiations were had between Greene and the seller and a contract entered into for the sale of the premises at a purchase price of $389,000. For negotiating the sale Greene received a commission of $5,000. The testimony of one of the purchasers, Irwin Forest, an account supervisor for a management consultant firm, shows he knew nothing about the property, either with regard to its value or its earnings; that he relied solely on his brother-in-law, Greene, who advised him it was a good investment. The other members of the corporation, sisters-in-law, did not testify, but there is no evidence that they had any specific knowledge with respect to the property. It further appears that Greene did all of the negotiating and that the petitioners were not present at the closing. Forest further testified he did not know any of the members of the seller corporation, nor any of the mortgagees. The record is devoid of any testimony or evidence which would indicate that the sale was not bona fide as the result of a transaction at arm’s length.
Whether the sale was on normal financing terms or otherwise may not be determined on this record since respondent rejected all offers of testimony on this point and held that the terms did not represent normal financing “ solely because the cash payment was less than 15% of the purchase price.” Rejection of the sales price solely on that ground was erroneous. (Matter of Bajart Management v. Weaver, supra; Matter of Crisa v. Weaver, supra.)
The fact that the Rent Administrator had previously rejected an application by the previous owner for an increase in rents on the basis of a valuation of $390,000, to which proceeding petitioners were not parties, and the fact that no application to review such determination was made by the then owners should not prevent petitioners from making application for a rent increase based on the purchase price paid by them for the property, absent a showing that there was some collusion between the seller and purchaser and that the sale was not a bona fide transaction, but rather one to circumvent the Administrator’s previous determination.
While the court is mindful of respondent’s laudable purpose in endeavoring to prevent spiraling rents where properties are continually being sold at increased prices, nevertheless, any *791 determination made by him must be based on evidence contained in the record and in conformity with the laws under which such determinations are made.
This matter is remitted to respondent for a further hearing and determination and the taking of testimony with respect to whether or not the sale was consummated on normal financing terms or otherwise and whether such sale was affected by any special circumstances, and for such other testimony as may be deemed advisable. In the meantime decision on this motion will be held in abeyance pending such determination.